UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DESTINY BAILEY, individually and on behalf of all similarly situated entertainers, | ) ) ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) | |
| | ) | FILE NO.: _____ |
| v. | ) | |
| | ) | |
| STRIPPER'S, INC., | ) | |
| JOHN CHAMBERS, and VEEDA | ) | JURY TRIAL DEMANDED |
| CHAMBERS, | ) | |
| | ) | |
| Defendants. | ) | COLLECTIVE ACTION |

## **COMPLAINT**

The Plaintiff, DESTINY BAILEY (hereinafter "Plaintiff"), by and

through the undersigned counsel, individually and on behalf of all similarly

situated entertainers, files this collective action Complaint against

STRIPPER'S, INC. d/b/a Strippers Gentlemens Club, JOHN CHAMBERS,

and VEEDA CHAMBERS, and shows:

## **INTRODUCTION**

1.     Plaintiff and other entertainers similarly situated worked during

the past three years at Stripper's, Inc., or continue to work as adult

entertainers at Stripper's, Inc.

2.     Defendant Stripper's, Inc. owns and operates a strip club in Byron, Peach County, Georgia known as "Strippers Gentlemens Club."

3.     John and Veeda Chambers are the managers and owners of Defendant Stripper's, Inc.

4.     Defendant Stripper's, Inc. misclassified Plaintiff and other similarly situated entertainers as independent contractors and failed to pay them the minimum wage and overtime wage for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").

5.     Defendants Stripper's, Inc. also required Plaintiff and similarly situated entertainers to make certain payments, fees, and fines to Stripper's, Inc. and its employees and others which caused their wages to drop below the minimum wage and applicable overtime wage, thereby constituting an unlawful "kickback" under the FLSA.

6.     Defendant Stripper's, Inc. required Plaintiff and similarly situated entertainers to contribute to an unlawful tip pool which caused Plaintiff's and the similarly situated entertainers' wages to drop below the minimum wage and applicable overtime wage.

7.     As a result of Defendants' violation of the FLSA, Plaintiff and the similarly situated entertainers seek unpaid minimum and overtime

wages, including recovery of unlawful deductions as part of the wage loss, liquidated damages, interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216.

## **PARTIES**

8.     Plaintiff is a resident of Atlanta, Fulton County, Georgia. Plaintiff and the other similarly situated entertainers were employed as entertainers by Defendant Stripper's, Inc. and each of them qualified as an "employee" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

9.     Plaintiff has consented in writing to assert claims under the FLSA.  Plaintiff's consent to join is attached hereto as Exhibit 1.  As this case proceeds, it is likely that other individuals will sign consent forms and join this action as opt-in Plaintiffs.

10.    The collective action members are current or former entertainers who were employed by Defendants during the three (3) years preceding the filing of this Complaint.

11.    Stripper's, Inc. is a Georgia for profit corporation with its principal place of business located in Byron, Peach County, Georgia.  At all times mentioned herein, Defendant Stripper's, Inc. was an "employer" of Plaintiff and the collective action members within the meaning of the FLSA, 29 U.S.C. § 203(d) and (g).

12.     Defendant John Chambers ("J. Chambers") is a Manager and upon information and belief a shareholder, officer, and director of Stripper's, Inc. and a resident of this district.  Defendant J. Chambers acted directly or indirectly on behalf of Stripper's, Inc., and at all times pertinent hereto, was an "employer" of Plaintiff and the collective action members within the meaning of the FLSA, 29 U.S.C. § 203(d) and (g).

13.     Defendant Veeda Chambers ("V. Chambers") is a Manager and upon information and belief a shareholder, officer, and director of Stripper's, Inc. and a resident of this district.  V. Chambers acted directly or indirectly on behalf of Stripper's, Inc, and at all times pertinent hereto, was an "employer" of Plaintiff and the collective action members within the meaning of the FLSA, 29 U.S.C. § 203(d) and (g).

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201 *et seq*.

15.     Venue is proper in this district because all or a substantial portion of the events forming the basis of this action occurred in this district. Defendants' club is located in Peach County, it is physically present in this district, and Plaintiff and the collective action members worked in this

district.

## FACTUAL ALLEGATIONS

16.    Plaintiff was employed as an entertainer at Stripper's, Inc. from June 2013 and continuing into January 2015 and from March 2016 until August 2017.

17.    Defendants misclassified Plaintiff and the other entertainers working at Stripper's, Inc. as independent contractors, failed to pay them any wage, and required them to pay to work for Defendants.

18.    Defendants John and Veeda Chambers had operational control over Stripper's, Inc. and made decisions affecting the employment and compensation of Plaintiff and similarly situated entertainers.

19.    Specifically, Defendants John and Veeda Chambers made the decisions to: (i) misclassify Plaintiff and other dancers as independent contractors rather than employees; (ii) not pay them the minimum and overtime wage as required by law; and (iii) establish and maintain a practice and policy of charging Plaintiff and other dancers to work for Defendants.

20.    At all times mentioned herein, Stripper's, Inc. was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

21.     Plaintiff and the other entertainers working at Stripper's, Inc. danced on stage for Stripper's, Inc.'s customers, played pool with Stripper's, Inc.'s customers, and provided table and lap dances for Stripper's, Inc.'s customers.

22.     Stripper's, Inc. did not pay any wages to Plaintiff and the other entertainers.

23.     Plaintiff and the other entertainers were compensated entirely by customers through tips.

24.     Stripper's, Inc. required each entertainer to work scheduled shifts and a certain number of hours per week during each shift.

25.     Stripper's, Inc. fined Plaintiff and the other entertainers for missing or being late to a scheduled shift.

26.     Stripper's, Inc. would not allow entertainers to leave the premises during their scheduled shifts without the permission of management.

27.     Stripper's, Inc.'s managers monitored the entertainers dress and appearance at work.

28.     Stripper's, Inc.'s managers had the authority to require dancers to change their appearance and attire at work.

29.     Stripper's, Inc.'s managers in fact required dancers to change their appearance and attire at work when they deemed it appropriate.

30.     Stripper's, Inc. established and maintained rules, policies, and procedures governing entertainers at work.

31.     Stripper's, Inc.'s managers had the authority to suspend, discipline, and terminate entertainers for violation of its rules.

32.     Entertainers were in fact suspended, disciplined and terminated for violation of Stripper's, Inc.'s rules, policies, and procedures.

33.     Stripper's, Inc.'s managers supervised Stripper's, Inc.'s entertainers on a day-to-day basis.

34.     Stripper's, Inc.'s required dancers to attend meetings.

35.     Stripper's, Inc.'s used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, club promotional efforts, and other work-related issues.

36.     Stripper's, Inc. paid all costs associated with operating the club's business, including but not limited to rent, upkeep and maintenance of the facility, utilities, furnishings, costs of food and drink and advertising marketing, and promoting Stripper's, Inc.

37.     Stripper's, Inc. invested significant sums to operate the Club.

38.    Stripper's, Inc.'s opportunity for profit and loss from operation of the club far exceeded any entertainers' opportunity for profit and loss from dancing at the club.

39.    Stripper's, Inc.'s marketing, promotional activities, advertising, and reputation resulted in customers' desire to frequent its club.

40.    Stripper's, Inc.'s targets, among other persons, customers traveling on Interstate Highway 75 ("I-75") by advertising nude dancing at the club on billboards located beside and near I-75.

41.    Stripper's, Inc. required club customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the club as customers.

42.    Stripper's, Inc.'s managers had the discretion whether or not to allow a dancer to perform.

43.    Stripper's, Inc.'s required Plaintiff and each entertainer to dance on stage a certain number of sets per shift.

44.    Stripper's, Inc.'s disc jockey ("DJ") called dancers to dance on stage on a set rotation established by Stripper's, Inc.

45.    Stripper's, Inc.'s DJ or management decided which music to play in the club.

46.     Stripper's, Inc's determined where an entertainer could dance and what she could charge for the dance.

47.     Stripper's, Inc. set the rates for table dancing ($15 per dance), lap dancing ($35 per dance), and for playing pool with customers ($20 per game).

48.     Stripper's, Inc.'s required each entertainer to pay the company the sum of $5 per table dance.

49.     Stripper's, Inc. required each entertainer to pay the company the sum of $15 per lap dance.

50.     Stripper's, Inc. required each entertainer to pay the company the sum of $25-$30 as a "house fee" for each shift to allow the entertainer to work the shift.

51.     Stripper's, Inc. required each entertainer to pay the company the sum of $5 per game of nude pool.

52.     Stripper's, Inc. required each entertainer to pay the DJ a "tip out fee" of 10% of their tips earned each shift.

53.     Stripper's, Inc. imposed fines on entertainers for failing to appear at work during a scheduled shift ($50 for failing to appear), for being late for work during a scheduled shift ($20 per hour), and for missing a dance set upon a stage.

54.     Stripper's, Inc. required an entertainer to pay a fee of $20-$30 to leave work early during a scheduled shift.

55.     The duties of club management included ensuring that dancers complied with club rules and policies.

56.     Stripper's, Inc. provided all of the equipment necessary for entertainers to earn a living at the club, such as stages used for dancer performances, poles used for dancing, sound systems, music, and lighting.

57.     Plaintiff and the other entertainers were economically dependent on Stripper's, Inc.

58.     Stripper's, Inc. does not require its dancers to have prior experience as dancers or any formal or special training.

59.     An entertainer was and is generally hired by Stripper's, Inc. based upon her looks and her willingness to disrobe.

60.     Stripper's, Inc. advertised (and continues to advertise) its business using pictures of scantily clad women.

61.     The presence of nude dancers was and is integral to Stripper's, Inc.'s business success.

62.     In fact, Stripper's, Inc. could not operate its nude dancing club without nude dancers.

63.     Plaintiffs were at all times pertinent hereto and are statutory "employees" of Stripper's, Inc. as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

64.      Defendants were Plaintiff's and the other entertainers' statutory "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

65.     Plaintiffs were not exempt from the minimum wage or overtime requirements of the FLSA.

66.     Plaintiff typically worked at least five shifts per week, and sometimes as many as seven shifts per week, while employed by Defendants.  Each shift lasted at least seven hours and sometimes as many as nine hours.

67.     Defendants paid Plaintiffs no wages or other compensation whatsoever.

68.     Defendants knew of the unlawfulness of or acted with reckless disregard to the lawfulness of its misclassification scheme.

69.     Defendants have ignored the law or made no efforts to ascertain whether or not its misclassification scheme complied with the law.

70.     This Court and other courts within the Eleventh Circuit have found similar misclassification schemes involving adult entertainers unlawful.[1]

71.     Despite the clear legal precedent in this Circuit, Defendants continue to operate a club using the same or similar unlawful labor practices.

72.     Upon information and belief, all of the policies and practices established by the Defendants for dancers and described in paragraphs 21 through 61 above are still in place at the club.  Upon information and belief, Defendants continue to operate unlawfully because it is more profitable for them to continue violating the law rather than comply with the law.

73.     Upon information and belief, Stripper's, Inc. maintains incomplete records of time worked by each entertainer and the amount of deductions each entertainer was required to pay each workweek to work at the club.

74.     Upon information and belief, Stripper's, Inc.'s failure to

---

[1]     *Clincy v. Galardi South Enter., Inc.*, 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011); *Stevenson v. Great American Dream, Inc.*, 2013 WL 6880921 (N.D.Ga. Dec. 31, 2013); *Berry v. Great American Dream, Inc.*, 2014 WL 5822691 (N.D.Ga. Nov. 10, 2014); *Vaughn v. Paradise Entm't Group, Inc.*, Case No. 14-CV-00914-SCJ, Doc. 190, (N.D.Ga. March 15, 2016); *Dean v. 1715 Northside Drive, Inc.*, No. 1:14-CV-03775-CAP, Doc. 102, (N.D.Ga. January 14, 2017); *Thompson v. 1715 Northside Drive*, No. 1:14-CV-390-RWS, at *11 (N.D.Ga. Mar. 30, 2015); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997).

maintain complete records of the time worked and amounts paid as fines, tips, gratuities, and service charges violate the record keeping requirements of 29 C.F.R. Part 516.

75.    Stripper's, Inc. required (and still requires) entertainers to share their tips with the club unlawfully.

## COLLECTIVE ACTION ALLEGATIONS

76.    Plaintiff incorporates by reference the paragraphs above and relies on them as if fully set forth herein.

77.    Stripper's, Inc. maintained a policy and practice of: (i) misclassifying entertainers as independent contractors; (ii) failing to maintain proper records of entertainer work and compensation; (iii) not compensating entertainers for the time they spent getting ready for work; (iv) failing to pay the minimum and overtime wage required by law; (v) using their tips for an unlawful purpose; and (vi) requiring entertainers to pay to work at Stripper's, Inc.

78.    The putative collective action members were subject to the same FLSA violations as Plaintiff who wish to join this action.  These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent.

Defendant Stripper's, Inc. can readily identify these similarly situated entertainers through its business records.

79.    The putative class includes:

All entertainers who were employed by Stripper's, Inc. after April 16, 2015.

(hereafter the "FLSA Class Members").

## CLAIMS FOR RELIEF

### COUNT I
### MINIMUM WAGE CLAIM
**(Claim for Violation of 29 U.S.C. § 206)**

80.    Plaintiff incorporates by reference the allegations in paragraphs 16-79 above and relies on them as if set forth fully herein.

81.    Each Defendant is an "employer" of Plaintiff and all others similarly situated within the meaning of the FLSA, 29 U.S.C. § 203(d).

82.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce."

83.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

84.    Plaintiff consents to sue in this action pursuant to 29 U.S.C. § 216(b).

85.    A consent to sue executed by each Plaintiff is attached to this demand.

-14-

86.     Defendants failed to pay Plaintiff and all others similarly situated the minimum wage for each hour worked in violation of 29 U.S.C. § 206.

87.     Defendants required Plaintiff and all others similarly situated to pay for permits, pay tip outs to various employees as described herein, pay house fees and other expenses, and pay fees and fines related to their dancing, all of which caused Plaintiffs wages to drop below the minimum wage or applicable overtime wage.

88.     The required payments were primarily or entirely for the benefit and convenience of Defendants.

89.     Plaintiff and all others similarly situated are entitled to reimbursement for the hours worked and unlawful deductions pursuant to 29 U.S.C. § 216(b).

90.     Based upon the conduct alleged herein, Defendants knowingly, intentionally, and willfully violated the FLSA by not paying Plaintiff and all others similarly situated the minimum wage under the FLSA.

91.     Throughout the relevant period of this lawsuit, Defendants cannot establish that their conduct that gave rise to this action was in good faith and based on reasonable grounds.

92.     Due to Defendants' FLSA violations, Plaintiff and all others

similarly situated are entitled to recover from Defendants all unpaid

minimum wages and an equal amount in the form of liquidated damages, as

well as reasonable attorneys' fees and costs of the action, including interest,

pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**OVERTIME WAGE CLAIM**
**(Claim for Violation of 29 U.S.C. § 207)**

93.    Plaintiff incorporates by reference the allegations in paragraphs

16-79 above and relies on them as if set forth fully herein.

94.    Each Defendant is an "employer" of Plaintiff and all others

similarly situated within the meaning of the FLSA, 29 U.S.C. § 203(d).

95.    Defendants are engaged in "commerce" and/or in the

production of "goods" for "commerce."

96.    Defendants operate an enterprise engaged in commerce within

the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

97.    Plaintiff consents to sue in this action pursuant to 29 U.S.C. §

216(b).

98.    A consent to sue executed by each Plaintiff is attached to this

demand.

99.    Defendants failed to pay Plaintiff and all others similarly

situated the required overtime wage for each hour over forty (40) worked in

a workweek in violation of 29 U.S.C. § 207.

100.   Defendants required Plaintiff and all others similarly situated to pay for permits, pay tip outs to various employees as described herein, pay house fees and other expenses, and pay fees and fines related to their dancing, all of which caused Plaintiff's wages to drop below the applicable overtime wage.

101.   The required payments were primarily or entirely for the benefit and convenience of Defendants.

102.   Plaintiff and all others similarly situated are entitled to compensation for all overtime hours worked and reimbursement of all unlawful deductions pursuant to 29 U.S.C. § 216(b).

103.   Based upon the conduct alleged herein, Defendants knowingly, intentionally, and willfully violated the FLSA by not paying Plaintiff and all others similarly situated the overtime wage under the FLSA.

104.   Throughout the relevant period of this lawsuit, Defendants cannot establish that their conduct that gave rise to this action was in good faith and based on reasonable grounds.

105.   Due to Defendants' FLSA violations, Plaintiff and all others similarly situated are entitled to recover from Defendants, all unpaid overtime wages and an equal amount in the form of liquidated damages, as

well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully prays that this Court:

1.    Certify this action as a collective action on behalf of the FLSA Class Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated entertainers appraising them of the pendency of this action and their claims and their rights to file consents to join this action and appointment of Plaintiff and the undersigned to represent the collective action class members;

2.    Award Plaintiff and each opt-in plaintiff judgment for wages at the minimum and overtime rate, as well as liquidated damages, interest and attorneys' fees as provided for under the FLSA;

3.    Award Plaintiff and each opt-in plaintiff judgment for unpaid wages in the form of unlawful deductions, including but not limited to fines, permits, tip out fees, house fees and other expenses related to their job, as well as liquidated damages in an equal amount, interest and attorneys' fees as provided for under the FLSA;

4.      Award Plaintiff all costs of this action permissible under 29 U.S.C. § 216 and 28 U.S.C. § 1920, including expert fees;

5.      Grant Plaintiff and opt-in plaintiffs a jury trial on all issues so triable; and

6.      Award Plaintiff such other and further relief as the Court may deem just and proper.

The undersigned counsel certifies that he complied with all local rules pertaining to format and font.

This 18th day of April, 2018.

*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley
Ga. Bar No. 237415

Attorney for Plaintiff
adudleylaw@gmail.com

Suite 200, Building 1
4200 Northside Parkway
Atlanta, GA  30327
404.687.8205