IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **DESTINY BAILEY, individually and on behalf of all similarly-situated entertainers,** *Plaintiff*, v. **STRIPPERS, INC.;[1] JOHN CHAMBERS; VEEDA CHAMBERS; and NEON COWBOY LOUNGE, INC.,** *Defendants*. | **CIVIL ACTION NO. 5:18-cv-00128-TES** |

**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT
AND FOR CIVIL CONTEMPT**

On April 17, 2019, the Court granted Plaintiff Destiny Bailey and four opt-in plaintiffs' Second Consent Motion to Approve Settlements of Claims Arising Under the Fair Labor Standards Act [Doc. 35]. *See* [Doc. 37]. As a result of that Order, the Court approved five settlement agreements, one for each plaintiff. [*Id.* at p. 4]; *see, e.g.*, [Doc. 35-3].

Pursuant to those agreements, John Chambers, Veeda Chambers, and Neon Cowboy, agreed to pay fixed sums to each plaintiff in exchange for "full and complete

---

[1] Via a Consent Motion to Dismiss, the Court dismissed the claims asserted against Strippers, Inc., with prejudice because the parties agreed that Neon Cowboy Lounge, Inc. ("Neon Cowboy") is the proper corporate defendant in this case[.]" *See* [Doc. 30 at p. 2] *in connection with* [Doc. 33].

settlement of any and all claims" asserted against them under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. See, e.g.*, [Doc. 35-3, p. 2, ¶ 1]. These sums included compensatory and liquidated damages, attorneys' fees, and costs. [*Id.*]. For almost a year, Defendants tendered payments, although at times, their payments (according to Plaintiffs' counsel) were not made in "compliance with the terms of the [S]ettlement [A]greements." [Doc. 39-2, Tillery Decl., ¶ 3]. In other words, they were late.

Under the terms of the Settlement Agreements, that the Court specifically approved and made its Order, each payment was due no "later than the 15th day of the month," s*ee, e.g.*, [Doc. 35-5, p. 2, ¶ 2], and Defendants had "a grace period of three (3) days from the date the payment is due to cure [a] default by delivering the entirety of a payment then due to Plaintiff and her counsel not later than 5 P.M. on the third day." *See, e.g.*, [*id.* at p. 6, ¶ 11(b)]. Or, stated differently, if Defendants didn't tender a monthly payment by the 18th of each month by 5:00 P.M., they were in default. Defendants made payments through February 2020. [Doc. 39-2, Tillery Decl., ¶ 3]. However, at the time Plaintiffs filed this Motion, Defendants had not made any payments for March 2020 (which was due on March 15, 2020) or April 2020 (which was due on April 15, 2020). [*Id.*].

When Defendants did not timely cure the defaulted April payment, Plaintiffs filed a Joint Motion to Enforce Settlement and For Civil Contempt [Doc. 39], which the Court heard via telephone conference on May 19, 2020. *See* [Doc. 44].

A.  **Standard for Civil Contempt**

To hold a party in civil contempt, the Court must find, by clear and convincing evidence, that (1) the person against whom contempt is charged willfully violated a valid and lawful order that was (2) clear and unambiguous and that (3) the person had the ability to comply with that order. *Ga Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2002); *Riccard v. Prudential Ins.*, 307 F.3d 1277, 1296 (11th Cir. 2002).

B.  **Discussion**

During the telephone conference, the Court and the parties discussed the specifics of the agreements at issue and the facts surrounding Defendants' ability to make payments. Since the Court did not permit a written Reply brief from Plaintiffs, much of Plaintiffs' argument during the telephone conference focused on Veeda Chambers' *ability* to make payments through the insurance proceeds from her late husband's (Defendant John Chambers) life insurance policy.[2] Defendants' argument, on the other hand, centered around an act of God—the on-going pandemic created by the coronavirus (COVID-19)—that led to their *inability* to make payments from the corporation's income due to government-mandated business closures. [Doc. 43 at pp. 1–6].

---

[2] John Chambers died before Plaintiffs filed this Motion. The Settlement Agreements do not provide that they would continue against or in favor of any party's estate. The Court expresses no opinion as to whether the judgments contemplated by the respective settlement agreements are enforceable against John Chambers' estate.

3

In an attempt to avoid civil contempt, Defendants argue that Neon Cowboy complied with the Court's Order incorporating the Settlement Agreements by making (late) payments with money lent to it by its chief executive officer, Veeda Chambers, from the insurance proceeds she received after husband's death. *See* [Doc. 43 at p. 7 (outlining Defendants argument against civil contempt on the basis that "[Neon Cowboy] purged itself of any contempt on April 28, 2020, when [Veeda] Chambers, depressingly[ ] lent [Neon Cowboy] money from her deceased husband's life insurance proceeds and brought [Neon Cowboy] current on its obligations")]; [Doc. 43-1, V. Chambers Aff., ¶¶ 2, 14]. But this argument fails for a couple of reasons.

First, this argument effectively treats Neon Cowboy as the *sole* defendant. However, the Settlement Agreements make it explicitly clear that Veeda and John Chambers share joint and several liability with Neon Cowboy. *See, e.g.*, [Doc. 35-3 at p. 6, ¶ 11(c)]. So, the fact that one co-defendant "lent" money to another in order to meet an obligation that applied to both of them doesn't matter. Both Veeda Chambers and Neon Cowboy had an independent duty to pay Plaintiffs as they had each agreed. The fact that Veeda Chambers lent Neon Cowboy the money that it eventually used to pay Plaintiffs only shows that *she* could have made payments all along, but she just chose not to.

Second, while Neon Cowboy may have a viable "act of God" excuse, Veeda Chambers does not. Even assuming the COVID-19 pandemic could legally be

4

considered an act of God that would excuse Neon Cowboy's performance, it did not prevent Veeda Chambers from timely paying as she was independently obligated to do whether Neon Cowboy operated or not. *See* [Doc. 43 at p. 6 (citing O.C.G.A. § 13-4-21)]. The Settlement Agreements in no way make Defendants' obligations to pay contingent on Neon Cowboy's ability to operate or generate income. As mentioned above, Veeda Chambers eventually paid the March and April payments. In fact, Defendants' counsel informed the Court that she had even put the now-late May payment in the mail before the telephone conference. Thus, Veeda Chambers clearly had the ability to tender her payments—but she only did so after Plaintiffs moved the Court to hold her and Neon Cowboy in civil contempt. Ms. Chambers offered no real reason for not paying on time other than the fact that her source of income, Neon Cowboy, wasn't operating due to coronavirus-related shutdowns. The Court finds that its Order was clear and she had the ability to comply, but she willingly did not.[3]

Based on the foregoing, the Court **GRANTS** Plaintiffs' Joint Motion to Enforce Settlement and For Civil Contempt [Doc. 39], and it finds that Defendants Veeda Chambers and Neon Cowboy had the ability to fulfill the terms of the Settlement Agreements and did not do so, they willfully violated the Court's Order Granting

---

[3] To the extent Veeda Chambers and Neon Cowboy believed that the payments had to flow directly from the corporation itself into Plaintiffs' pockets, Neon Cowboy is also in civil contempt because it could have borrowed the money from Veeda Chambers (as it eventually did) in order to avoid default.

Second Consent Motion to Approve Settlements of Claims Arising Under the Fair Labor Standards Act [Doc. 37].

In addition to its civil contempt finding, the Court also notes that Defendants have not executed the requisite Consent Judgment following the default. *See, e.g.*, [Doc. 35-3 at p. 6, ¶ 11(c)]. While the Court will not hold them in civil contempt for this failure, it will nevertheless enforce the previously adopted Settlements Agreements and compel them to comply with the Consent Judgment provision. Accordingly, the Court **ORDERS** Defendants Veeda Chambers and Neon Cowboy to "jointly and severally execute" and submit a Consent Judgment in favor of Plaintiffs, as originally contemplated by the Settlement Agreements in the event of default.[4] *See* [*id.*]. Defendants' executed Consent Judgment is due to Plaintiffs' counsel within **10 DAYS** of the date of this Order.

### C. Attorneys' Fees

Lastly, the Court addresses the issue of attorneys' fees for Plaintiffs' counsel. In the Eleventh Circuit, starting point in calculating these fees award begins with the lodestar method—the number of hours reasonably expended on a case multiplied by a reasonable hourly rate. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The first step is to determine the hourly rate ("the prevailing market rate in the relevant legal

---

[4] Although the Consent Judgments must be in the amounts specified in the Settlement Agreements, Defendants will get credit for any and all sums they previously paid towards those amounts.

community for similar services by lawyers of reasonably comparable skills, experience, and reputation"). *Id.* (citation omitted). Here, Plaintiffs' counsel, Vincent M. Tillery, bills at an hourly rate of $300—a rate previously approved by the Court in this case. [Doc. 45, Tillery Second Decl., ¶ 4]. Thus, all that remains is a review of Tillery's compensable hours. *Loranger*, 10 F.3d at 781–82.

As for his compensable hours, Tillery has submitted his fee request in a form that enables the Court to determine how much time he 'reasonably expended on the litigation.' *Id.* at 782 (quoting *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 242 (1985); *see also* [Doc. 39-2], [Doc. 45]. In addition to drafting Plaintiffs' Motion, Tillery states that he initially spent 15 hours spanning across a six-day period on document review, legal research, and communication with each of the five plaintiffs. [Doc. 39-2, Tillery Decl., ¶ 7]. Then, after he filed Plaintiffs' Motion, he states that he billed five additional hours by drafting a letter to Defendants' counsel, researching Defendants' legal arguments from their opposition brief, preparing for the Court's telephone conference, and "appear[ing] telephonically" at that conference to argue Plaintiffs' case. [Doc. 45, Tillery Second Decl., ¶ 3].

In total, Tillery expended 20 compensable hours with regard to the instant Motion, and, therefore, submits that $6,000 is reasonable under the lodestar approach. The Court agrees. Tillery communicated with five seperate plaintiffs and performed the necessary actions pertaining to the Motion and the Court's telephone conference in a

7

reasonable manner. Based on this finding, Vincent M. Tillery is entitled to recover **$6,000** as reasonable attorneys' fees. The Defendants shall remit that sum to Plaintiff's counsel within 30 days.

**SO ORDERED**, this 22nd day of May, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
